**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Briggs, | No. CV-20-00478-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| PFVT Motors LLC, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Compel Arbitration. (Doc. 23). The Court has considered the Motion, (Doc. 23), Plaintiff's Response, (Doc. 24), and Defendant's Reply (Doc. 25)[1]. For the following reasons, the Defendant's motion is denied.

## BACKGROUND

Several years after purchasing a vehicle from Defendant PFVT Motors, and over two years after trading that vehicle to another dealership, Plaintiff Karen Briggs began to receive phone calls from Defendant seeking new business from her. Plaintiff continued to receive these calls although she asked Defendant not to contact her. As a result, Plaintiff brought suit against Defendant, alleging violation of the Telephone Consumer Protection

---

[1] In its reply brief, Defendant raises the new argument that the issue of arbitrability has been delegated to the arbitrator. Because Defendant made this argument for the first time in its reply, it is waived and not considered. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."). Accordingly, Plaintiff's motion for leave to file a sur-reply (Doc. 26) is denied.

Act, 47 U.S.C. § 227. In response, Defendant filed a motion to compel arbitration, arguing that the Retail Order For A Motor Vehicle Agreement ("Agreement") between it and Plaintiff contains an arbitration clause that governs the instant TCPA claim. Under the clause,

> A "dispute" is any claim or dispute, whether in contract, tort or otherwise (including without limitation, the interpretation and scope of this clause, the arbitrability of any issue and matters relating to the consummation, servicing, collection or enforcement of this Agreement and any retail installment transaction sales agreement), between us and our employees, agents, successors or assigns, which arise out of or relate to this Agreement or any resulting transaction or relationship (including such relationship with third parties who did not sign this Agreement). At your or our election (or the election of any third party), any dispute shall be resolved by neutral, binding arbitration and not by a court action.

(Doc. 23-1 at 3.) Plaintiff asserts that the dispute does not fall within the scope of the arbitration agreement. (Doc. 24 at 2.)

## DISCUSSION

### I. Legal Standard

The Supreme Court, in *First Options of Chicago, Inc. v. Kaplan*, discussed the three controversies inherent in every dispute such as this. *See* 514 U.S. 938, 942 (1995). First, the parties disagree about the substantive merits of the underlying dispute (the "merits question"). *Id.* Second, "they disagree about whether they agreed to arbitrate the merits [the 'arbitrability issue']." *Id.* at 942. Third, "they disagree about who should have the primary power to decide the [arbitrability issue]" ("the jurisdiction issue"). *Id.*

The federal law of arbitrability under the Federal Arbitration Act ("FAA") governs the allocation of authority between courts and arbitrators. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *see also* 9 U.S.C. §§ 1–4. By its terms, section 3 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has" been reached. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ("The standard for demonstrating arbitrability is not a

high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms."). Because of this mandate, the FAA limits courts' involvement to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. If these inquiries are answered in the affirmative, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## II.   Analysis

The scope of an arbitration agreement is governed by federal substantive law. *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). In accordance with the broad federal policy favoring arbitration agreements, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, the threshold for arbitrability is not high, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and the burden is on the party resisting arbitration, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"The presumption in favor of arbitration, however, does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044–45 (9th Cir. 2009) (internal quotation omitted). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648. Thus, "[a]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Specifically, the Ninth Circuit has found that the language "all disputes arising under" and "arising in connection with" must be construed liberally in arbitration clauses. *Simula*, 175 F.3d at 720–21. Where an arbitration provision contains such broad terms,

arbitration is mandated as long as the allegations "touch matters" covered by the agreement. *Id.* at 721. While the clause here uses slightly different language—"arise out of or relate to this Agreement or any resulting transaction or relationship" instead of "arising in connection with"—the Ninth Circuit's standard holds because the two phrases are similarly broad. (Doc. 23-1 at 3.)

Here, the arbitration clause does not encompass the dispute at issue. The subject of this suit does not "touch matters" covered by the Agreement because this suit is the result of Defendant's extra-contractual actions, unrelated to the promises outlined in the parties' contract. The Agreement was for the purchase of a vehicle, and this suit concerns Defendant's subsequent attempts to solicit new business. Although courts interpret arbitration agreements broadly, they must be bound by some limiting principle which excludes wholly unrelated conduct between the parties. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205 (1991) ("The object of an arbitration clause is to implement a contract, not to transcend it."); *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003) (explaining that "absurd results ensue" from an unlimited arbitration clause, such that if a defendant murdered the plaintiff in order to discourage default on a loan, the wrongful death claim would have to be arbitrated).

Further, this case is unlike the Ninth Circuit cases affirming the broad applicability of arbitration clauses because the Defendant's conduct is distinct from the Agreement. *See Simula*, 175 F.3d at 720–21 (applying an arbitration clause to parties in an ongoing contractual relationship and dispute which arose out of a contract concerning automobile safety equipment); *Standard Fruit Co.*, 937 F.3d at 471–72 (applying an arbitration clause from an agreement attempting to resolve an ongoing dispute over the parties' ownership and control of banana plantations); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1461, 1463 (9th Cir. 1983) (applying an arbitration clause from a joint building agreement where the suit was a result of the agreement not going forward). Rather, the Eleventh Circuit in *Gamble v. New Eng. Auto Fin.*, 735 F. App'x 664 (11th Cir. 2018) is instructive. There, months after paying off an auto loan from the defendant, the plaintiff

received repeated messages from the defendant seeking new business. *Id.* at 664. The court refused to find that the parties' arbitration clause from the first loan applied to this new solicitation of business. *Id.* at 666. Although the clause applied to "any dispute arising from or relating to" the agreement, language making an agreement broad "does not make it limitless." *Gamble*, 735 F. App'x at 666; *see In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012) (refusing to find a suit arbitrable where the arbitration agreement entered at the time of a service covered "any and all disputes" because the plaintiff was subsequently bombarded with texts promoting future, unrelated services from the defendant).

Here too, Defendant's conduct is a new solicitation of business unrelated to the parties' prior agreement. The Agreement covered the sale of a vehicle that Plaintiff traded to another dealer years prior to Defendant's new solicitations of Plaintiff's business. (Doc. 24 at 3.) The arbitration clause's application to any suit that may "arise out of or relate to" the Agreement or relationship is clearly broad, but that fact alone cannot compel the Plaintiff to arbitrate all future suits no matter how unrelated to the original agreement and relationship. (Doc. 23-1 at 3); *see Breda v. Cellco P'ship*, 934 F.3d 1, 8 (1st Cir. 2019) (refusing to find a dispute arbitrable because "all of the material facts underlying [plaintiff's] claims . . . occurred after the agreement's termination."). Rather, Defendant's interpretation extends the scope of arbitrable claims past the point that any reasonable consumer would expect. This dispute thus lies outside the scope of the parties' arbitration agreement.

## CONCLUSION

As described above, the Court finds Plaintiff's suit outside the scope of the parties' arbitration agreement.

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply (Doc. 26) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 23) is **DENIED.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to update the caption on the docket to correctly identify Plaintiff as Karen Briggs.

Dated this 8th day of September, 2020.

_____
G. Murray Snow
Chief United States District Judge